**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-2578

———————

DAVID FRANCISCO CANAS-FLORES,

a/k/a DAVID FRANCISCO,
                                                          Petitioner
                          v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                          Respondent

———————

On Petition for Review of an Order
Of the Board of Immigration Appeals
Agency No. A-205-656-833
Immigration Judge:  Honorable Kuyomars Q. Golparvar

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 13, 2018

———————

Before: JORDAN, KRAUSE, and GREENBERG, <u>Circuit Judges</u>

(Opinion Filed:  July 18, 2018)

———————

OPINION[*]

———————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENBERG, <u>Circuit Judge</u>.

## I.  INTRODUCTION

David Francisco Canas-Flores petitions for review of a decision and order of the Board of Immigration Appeals ("BIA") dismissing his appeal from an order of an Immigration Judge ("IJ") denying his application for withholding of removal and relief under the Convention Against Torture ("CAT").  For the reasons that follow, we will deny the petition.

## II.  BACKGROUND

Canas-Flores, a native and citizen of El Salvador, entered the United States unlawfully in June 2010 and ever since unlawfully has remained in this country.  After his arrest in 2012, the Department of Homeland Security ("DHS") served Canas-Flores with a notice to appear, charging him with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(6)(A)(i).  Subsequently, DHS released him from detention but he was arrested again, and returned to DHS custody.

Canas-Flores submitted a pro se application for asylum and withholding of removal, which an IJ denied.  Canas-Flores appealed to the BIA which remanded the case to the IJ because the record did not contain an oral decision of the IJ.  On remand, with the assistance of counsel, Canas-Flores submitted an updated application seeking asylum, withholding of removal, and CAT relief.[1]

---

[1] But he has abandoned his asylum application because it was untimely.

At the removal hearing, Canas-Flores testified that he came to the United States because he feared gangs in El Salvador. He stated that after he was released from jail in El Salvador in 2007, members of the MS-13 gang recruited him to be a leader in their gang in which he would be admired because of his status as a former prisoner. After he refused to join the MS-13 gang because of what he claimed were his "Christian beliefs," A.R. 186-87, gang members accused him of belonging to a rival gang, harassed him, and threatened "to kill" him. A.R. 186-87. Canas-Flores testified that he then moved to Guatemala but later returned to El Salvador, where gang members harassed him and accused him of belonging to another gang. He also testified that the MS-13 gang forced his brother to become a gang member and that a MS-13 gang member shot his cousin because she tried to withdraw from the gang.

Canas-Flores did not report the harassment to the police because he believed that they would not protect him due to his criminal record. He also said that if he returned to El Salvador, he would be forced to participate in gang activities and would "end up being killed." A.R. 200. Based on these claims, his counsel argued that Canas-Flores was entitled to relief because he would be persecuted on the basis of his membership in three particular social groups ("PSG"): (1) "gang-resistant El Salvadoran youth who refuse to join the gangs because of their personal and religious beliefs," A.R. 219, (2) "former El Salvadoran prisoner[s] or inmate[s]," and (3) "his family," A.R. 220.

The IJ denied Canas-Flores's application, and the BIA dismissed his appeal, adopting the IJ's conclusions that his first two proposed PSGs did not meet the BIA's requirements of particularity and social distinction and that, although a PSG based on

3

family membership can be legally cognizable in certain circumstances, Canas-Flores did not establish the requisite nexus between his membership in that group and his feared persecution. The BIA also affirmed the IJ's denial of Canas-Flores's application for CAT protection because he did not assert that any government official had tortured him and his claim that the Salvadoran government would acquiesce in his torture by gang members was "speculative." A.R. 4. Canas-Flores then petitioned for review.

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The IJ had jurisdiction over Canas-Flores's immigration proceedings under 8 C.F.R. § 1208.2, and the BIA had jurisdiction over the appeal pursuant to 8 C.F.R. §§ 1003.1(b) and 1240.15. We have jurisdiction over final orders of the BIA under 8 U.S.C. § 1252.

When the BIA issues its own opinion on the merits, we review its decision, not that of the IJ. Mahn v. Att'y Gen., 767 F.3d 170, 173 (3d Cir. 2014). However, where, as here, the BIA expressly adopts portions of the IJ opinion, we review both the IJ and BIA decisions. See S.E.R.L. v. Att'y Gen., No. 17-2031, ____F.3d ____, 2018 WL 3233796, at *4 (3d Cir. July 3, 2018); Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We "accept factual findings if supported by substantial evidence," meaning we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result." Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015) (citation omitted). However, "[w]e review the BIA's legal determinations de novo, [though] ordinarily subject to the principles of deference set forth in Chevron,

4

U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-45, 104 S.Ct. 2778, 2781-83 (1984)." Id.

## IV.  DISCUSSION

Canas-Flores argues that the BIA erred in (1) adding the particularity and social distinction requirements in determining whether a PSG is cognizable, (2) applying the additional requirements to Canas-Flores's proposed PSGs, and (3) denying Canas-Flores's petition.  None of these arguments has merit.

### A.  Withholding of Removal

To be eligible for withholding of removal to another country under the INA, an alien must prove that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  To meet this standard, the alien must show either that he was subject to (1) past persecution, a circumstance that creates a rebuttable presumption that he will be subject to future persecution, or (2) that it is more likely than not that he will suffer future persecution if removed to the country in question.  8 C.F.R. § 208.16(b).

Canas-Flores asserts that he is entitled to withholding of removal because he will be persecuted on the basis of his membership in a PSG of either "former El Salvadoran prisoners or inmates" or "gang resistant El Salvadoran youth who refuse to join gangs because of their personal and religious beliefs."  Pet'r Br. at 7-8.  Canas-Flores also asserts that he was persecuted on account of his membership in the PSG "consisting of his family."  Pet'r Br. at 8; A.R. 220.

5

The determination of what constitutes a cognizable PSG under the INA "is a continuously developing question of law and one that must be answered on a case-by-case basis." Serrano-Alberto v. Att'y Gen., 859 F.3d 208, 212 n.2 (3d Cir. 2017). The BIA rested its conclusion that Canas-Flores has not established his membership in a PSG on its interpretation of PSG to which we give Chevron deference. See S.E.R.L., 2018 WL 3233796, at *9-10, (making an exhaustive analysis of the Chevron issue which we will not repeat).

### 1. "Particular Social Group"

The INA does not define "particular social group," and its legislative history does not reveal "clear evidence of legislative intent." Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 594 (3d Cir. 2011). The BIA determined that "persecution on account of membership in a particular social group" under the INA referred to

> persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic. The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or land ownership. . . . [W]hatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.

Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985), overruled on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987). We have accorded Chevron deference to the BIA's immutability requirement. Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993).

6

In 2006 and 2007, the BIA introduced the additional requirements of "social visibility" and "particularity" to the concept of a PSG, and in 2014, the BIA renamed the social visibility requirement as "social distinction" and explained that "[t]o be socially distinct, a group need not be seen by society; rather, it must be perceived as a group by society." Matter of M-E-V-G-, 26 I. & N. Dec. 227, 240 (BIA 2014). That is, the common immutable characteristic defining the group makes it "distinct[] from other persons within the society in some significant way," id. at 238, and "the relevant society perceives, considers, or recognizes the group as a distinct social group," Matter of W-G-R-, 26 I. & N. Dec. 208, 217 (BIA 2014).

Regarding the "particularity" requirement, the BIA explained that the group must "be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." M-E-V-G-, 26 I. & N. Dec. at 239. Particularity requires "a clear benchmark for determining who falls within the group" based on terms with "commonly accepted definitions in the society of which the group is a part." W-G-R-, 26 I. & N. Dec. at 214. Although there is some overlap, the concepts of social distinction and particularity are not the same, as "each emphasize a different aspect of a particular social group." M-E-V-G-, 26 I. & N. Dec. at 241. While particularity "addresses the 'outer limits' of a group's boundaries[,] . . . is definitional in nature," and may be impacted by societal considerations, social distinction concerns whether a proposed group is viewed by society as "sufficiently separate or distinct." Id. (internal quotation marks and citations omitted).

In sum, a PSG is a group that is: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Id. at 237. We have in a precedential opinion filed essentially contemporaneously with this case approved this definition. See S.E.R.L., 2018 WL 3233796, at *1.

2. Canas-Flores's Proposed Particular Social Groups

On appeal, Canas-Flores asserts membership in two proposed PSGs other than his family: (1) "gang resistant El Salvadoran youth who refuse to join gangs because of their personal and religious beliefs," and (2) "former El Salvadoran prisoners or inmates." Pet'r Br. at 7-8. The BIA's conclusion that neither proposed group satisfies its particularity and social distinction requirements was not an error.

Canas-Flores has not presented evidence showing that people in El Salvador perceive young people who refuse to join gangs on account of their personal or religious beliefs or former prisoners to be socially distinct groups. We therefore conclude that both of his proposed PSGs fail the social distinction requirements and that the BIA did not err in concluding that the groups are not cognizable.

We also reject Canas-Flores's argument that the BIA erred in not finding a nexus between the persecution he suffered or feared and his membership in the "PSG consisting of his family." Pet'r Br. at 8. Although a PSG based on family membership can be legally cognizable in certain circumstances, see Gonzales v. Thomas, 547 U.S. 183, 186, 126 S.Ct. 1613, 1615 (2006); see also Sanchez-Trujillo v. INS, 801 F.2d 1571, 1576 (9th Cir. 1986) ("Perhaps a prototypical example of a 'particular social group' would consist

8

of the immediate members of a certain family . . . ."), Canas-Flores failed to demonstrate that his membership in his family was "one central reason" for the asserted harm. See Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 685 (3d Cir. 2015). Although he testified that his brother was forced to join the MS-13 gang and that members of the gang shot his cousin because she tried to leave it, there is no evidence demonstrating that the gang members targeted him on account of his familial relationship to his brother and cousin. Therefore, Canas-Flores's claim on this ground also fails.[2]

Because Canas-Flores failed to demonstrate persecution on account of membership in a PSG, he is not entitled to withholding of removal.

### B. CAT Claim

The BIA also correctly denied Canas-Flores CAT relief. To qualify for relief under CAT, petitioners must establish that if removed, it is more likely than not that they would be tortured[3] "with the consent or acquiescence of a public official or another person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Acquiescence means a

---

[2] We also uphold the BIA's conclusion that Canas-Flores waived his request for withholding of removal based upon his claimed membership in a proposed PSG consisting of "presumed or suspected gang members," A.R. 3 n.4, because he did not rely on this PSG before the IJ. See Prabhudial v. Holder, 780 F.3d 553, 555 (2d Cir. 2015) (holding that "the BIA may apply the doctrine of waiver to refuse to consider an argument that was not raised before an IJ" and noting that every court of appeals to have considered the issue had reached the same conclusion).

[3] To constitute torture, there must be "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005); see also 8 C.F.R. § 208.18(a)(1) (defining torture).

government official participates in, agrees to, or "turn[s] a blind eye to certain groups' torturous conduct. . . ." Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 70 (3d Cir. 2007), as amended (Mar. 6, 2007).

We agree with the BIA's conclusion that Canas-Flores failed to establish government acquiescence in conduct that he regards as torture. As the IJ found, Canas-Flores never reported to the police the harassment he faced out of fear "that the police would classify him as a criminal and would arrest him." A.R. 52. Furthermore, he did not present any evidence from which we may infer that the police have "turn[ed] a blind eye" to gang activity, or any evidence compelling us to conclude that it is more likely than not that he would be tortured with the acquiescence of a public official if he were returned to El Salvador. Because he did not show that any Salvadoran government official acquiesced in or ignored the gang activity that Canas-Flores feared, or that any such official will do so in the future his CAT claim fails.

## V. CONCLUSION

For the foregoing reasons, we will deny Canas-Flores's petition for review.

10